**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| **JACKIE LYSENGEN, on behalf of the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,** | |
| **Plaintiff,** | **Case No.** |
| **v.** | |
| **ARGENT TRUST COMPANY, JAN ROUSE, and EDWARD C. MILLER,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Jackie Lysengen, by her undersigned attorneys, on behalf of the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan, and similarly situated participants in the Plan and their beneficiaries, alleges upon personal knowledge, the investigation of her counsel, and upon information and belief as to all other matters, as to which allegations she believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.     Plaintiff Jackie Lysengen ("Plaintiff"), formerly known as Jackie Houska, brings this suit against Argent Trust Company ("Argent"), the trustee for the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan (the "Plan") when the Plan acquired shares of Morton Buildings, Inc. ("Morton") in 2017, and against selling shareholders Jan Rouse and Edward C. Miller ("Shareholder Defendants").

1

2.      Plaintiff is a participant in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who was vested in shares of Morton allocated to her account in the Plan.

3.      This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by Argent when it caused the Plan to buy shares of Morton for more than fair market value in 2017 and other relief.

4.      As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.      At all relevant times, Morton was a privately held company and a party in interest to the Plan. Morton adopted the Plan effective January 1, 2017. On May 8, 2017, the Plan purchased 2,005,662 shares of Morton's common stock. Company common stock shares totaling 1,956,992 and 48,670 were purchased at $75.25 and $10.75 per share for $147,263,648 and $523,229, respectively, totaling $147,786,877. The reduced share price between the Plan and Morton for the 48,670 shares was reportedly due to a decrease in the fair market value of Morton's shares following the issuance of debt to finance the $147,263,648 portion of the transaction. The stock purchase was financed by three term loan agreements that the Plan entered into with: (1) Morton, for $132,277,461 at an interest rate of 2.75%, (2) Morton, for $523,229 at an interest rate of 2.75%, and (3) a former shareholder (the "Former Shareholder"), for $14,986,187 at an interest rate of 5.00%, all to be repaid over 30 years (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction"). At that time, Morton became 100% employee owned.

6.     Argent represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the Plan's behalf.

7.     The ESOP Transaction allowed the selling shareholders, including Defendant Shareholders and other persons including members of the Getz family ("Selling Shareholders"), to unload their interests in Morton above fair market value and saddle the Plan with tens of millions of dollars of debt over a 30-year repayment period to finance the Transaction. Argent failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants, including Plaintiff.

8.     Jan Rouse and Edward C. Miller, the Defendant Shareholders, are parties in interest who sold shares in the ESOP Transaction. The Defendant Shareholders are liable under ERISA for participating in the prohibited transactions and in Argent's breaches of fiduciary duty.

9.     Plaintiff brings this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by them and similarly situated participants, resulting from Argent's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA, and breaching its fiduciary duties under ERISA, and the Defendant Shareholders' participation in these violations.

## JURISDICTION AND VENUE

10.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to require Argent to make good to the Plan losses resulting from its violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against Argent and the Defendant Shareholders, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets,

and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

11.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this District, because some of the events or omissions giving rise to the claims occurred in this District, and because one or more Defendants reside or may be found in this District.

13.     From the effective date of the Plan on January 1, 2017 to the present, the address of the Plan Administrator, Morton, was 252 West Adams, Morton, Illinois 61550, in Tazewell County.

## PARTIES

14.     Plaintiff Jackie Lysengen is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since the adoption of the Plan effective on January 1, 2017. Plaintiff Lysengen resides in Eden Prairie, Minnesota. She was a Construction Center Administrator (CCA) at Morton. She was employed there from December 28, 1990 to August 23, 2019. She was vested by the Plan's terms in shares of Morton in her Plan account.

15.     Defendant Argent operates as an investment management firm and offers financial planning, trusts, and real estate management services to families and organizations. Argent's principal place of business is 1100 Abernathy Road, 500 Northpark, Suite 550, Atlanta, Georgia 30328. Argent is a division of Argent Financial Group, an independent wealth management firm. Argent Financial Group is headquartered at 500 E Reynolds Dr., Ruston, Louisiana 71270.

4

16.     Argent was the Trustee of the Plan at the time of the ESOP Transaction. Argent was a "fiduciary" under ERISA because it was the Trustee. As Trustee, Argent had exclusive authority to manage and control the assets of the Plan and had sole and exclusive discretion to authorize and negotiate the ESOP Transaction on the Plan's behalf. Argent was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), at all times that it was Trustee of the Plan.

17.     The Notes to Financial Statements of the Plan's 2017 Form 5500 reports that service providers to the Plan are parties in interest under ERISA, and that Argent was the Plan's custodian and holds the Plan's assets.

18.     Argent's power and authority does not include the power and authority to interpret and construe the terms of the written Plan document.

19.     Defendant Jan Rouse was a selling shareholder in the ESOP Transaction. She was a Director of Morton at the time of the ESOP Transaction. Jan Rouse was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), as a Morton director at the time of the ESOP Transaction.

20.     Defendant Edward C. Miller was a selling shareholder in the ESOP Transaction. He was a Director of Morton at the time of the ESOP Transaction. Edward C. Miller was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), as a Morton director at the time of the ESOP Transaction. Edward C. Miller was an officer and employee of Morton at the time of the ESOP Transaction. He was a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14), as a Morton officer and/or employee at the time of the ESOP Transaction.

## FACTUAL ALLEGATIONS

21.     Headquartered in Morton, Illinois, Morton bills itself as the industry leader in post-frame manufacturing and construction. Morton operates in 43 states with 103 construction centers and eight manufacturing plants across the country. Morton had approximately 1,700 employees at

5

the time of the ESOP Transaction. Morton was at all times a private company. There is and was no public market for Morton stock.

22.     Morton was founded in 1903 by John Getz Sr., as the Interlocking Fence Company. Morton was owned by the Getz family for 113 years, until the 2017 ESOP Transaction.

23.     Morton was incorporated in Illinois on June 26, 1903.

24.     Morton is headquartered at 252 West Adams, Morton, Illinois 61550.

25.     Morton is an S corporation, effective January 1, 2018.

26.     Morton stock is not readily tradable on an established securities market.

27.     Morton adopted the Plan effective January 1, 2017.

28.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

29.     The Plan is a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of Morton.

30.     The Plan's principal asset was Morton stock at all times since the ESOP Transaction.

31.     The Plan is an individual account plan, or defined contribution plan, under which a separate individual account was established for each participant.

32.     Morton is and was from the inception of the Plan the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

33.     Employees of Morton participate in the Plan.

34.     Morton is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

35.     The Plan's Forms 5500 report at Part II Lines 2a & 3a that Morton is the Plan's administrator.

36.     Morton is and was an ERISA fiduciary to the Plan as its administrator.

37.     The Schedules H, Line 4i -Schedule of Assets (Held At End of Year) to the Plan's Forms 5500 Annual Return/Report for plan years ending December 31, 2017, and December 31, 2018, report that Morton is a party in interest to the Plan.

38.     Morton is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

39.     Morton's duties as Plan Administrator were delegated to a benefit plan committee appointed by Morton's Board of Directors.

40.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. At the time of the ESOP Transaction, the Morton Board of Directors included Selling Shareholders, including Defendant Shareholders. The Selling Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), at the time of the ESOP Transaction, as directors of Morton or persons with powers or responsibilities similar to directors; and/or as 10 percent or more shareholders of Morton, directly or indirectly; and/or as officers of Morton or persons with powers or responsibilities similar to officers; and/or as employees of Morton; and/or as relatives of a party in interest.

41.     Morton appointed Argent as Trustee of the Plan. As Trustee, Argent had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for Morton stock.

42.     As Trustee for the Plan, it was Argent's exclusive duty to ensure that any transactions between the Plan and the Selling Shareholders and between the Plan and Morton, including acquisitions of Morton stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

43.     On May 8, 2017, the Plan purchased from the Selling Shareholders 2,005,662 shares of Morton's common stock. Company common stock shares totaling 1,956,992 and 48,670 were purchased at $75.25 and $10.75 per share for $147,263,648 and $523,229, respectively, totaling $147,786,877.

44.     At that time, Morton became 100% employee owned.

45.     The Plan's purchase of the Morton shares was financed by three term loan agreements that the Plan entered into with: (1) Morton, for $132,277,461 at an interest rate of 2.75%, (2) Morton, for $523,229 at an interest rate of 2.75%, and (3) the Former Shareholder, for $14,986,187 at an interest rate of 5.00%, all payable in annual payments with final payments due in 2046.

46.     Plaintiff was allocated shares of Morton stock in her individual account in the Plan in 2017 and 2018. She was 100% vested in her Morton shares.

47.     The Selling Shareholders were the shareholders of the majority of Morton common stock at the time of the ESOP Transaction.

48.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Morton provided financial projections to Argent for the valuation for the ESOP Transaction. The financial projections were unreasonably optimistic.

49.    Morton announced in a Media Release dated May 10, 2017 that: "As an employee-owned company, Morton Buildings will continue to operate under its existing business model and management structure."

50.    Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Plan paid a premium to remove Selling Shareholders including Getz family members, who were involved in other litigation, from ownership of Morton. The Plan paid more than fair market value for Morton due to this payoff as well as a faulty valuation of the company.

51.    Prairie Capital Advisors, Inc. was the buyer-side valuator working with Argent on the ESOP Transaction.

52.    The valuation of Morton stock strangely rose for the May 8, 2017 sale to the Plan, and then plummeted after the ESOP Transaction. On December 31, 2016, Morton stock was valued at $58.04 per share. Just over four months later, at the time of the ESOP Transaction on May 8, 2017, Morton stock was valued at $75.25 per share. But as of December 31, 2017, the stock was revalued at $33.78 per share. The stock valuation dropped again a year later, when as of December 31, 2018 it was valued at $29.48 per share.

53.    Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Argent did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. Argent's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for Morton stock in the ESOP Transaction due to Argent's reliance on unrealistic growth

projections, unreliable or out-of-date financials, improper discount rates, inappropriate guideline public companies for comparison, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered the valuation of Morton stock in the ESOP Transaction faulty.

54. Incentives to Argent to act in favor of the Selling Shareholders in the ESOP Transaction included the possibility of business from sellers of companies who understood that Argent applied a lesser degree of due diligence in ESOP purchases of businesses than is typical for non-ESOP-buyers' purchases of businesses, engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement, and engagement as the custodian for the Morton Buildings, Inc. 401(k) and ESOP, which is also sponsored by Morton, and the fees paid for that engagement. Effective May 8, 2017, Argent was appointed custodian of the Morton Buildings, Inc. 401(k) and ESOP for its investments in Morton common stock and Fidelity Investments Money Market Treasury Portfolio I.

55. Argent is liable to the Plan for the difference between the price paid by the Plan and the actual value of Morton shares at the time of the ESOP Transaction.

56. The Defendant Shareholders are liable to the Plan to repay the difference between the price they received and the actual value of their Morton shares at the time of the ESOP Transaction.

57. Argent has received consideration for its own personal account from Morton for its services in the ESOP Transaction in the form of fees, under a contract made when the Selling Shareholders owned Morton.

58. The Notes to Financial Statements of the Plan's 2017 Form 5500 explains that the Plan's administrative expenses for 2017 were paid by Morton.

59.     Pursuant to Argent's engagement agreement, Morton, at a time that it was owned by the Selling Shareholders, agreed to indemnify Argent as Plan Trustee in connection with the ESOP Transaction ("Engagement Indemnification Agreement"). The Engagement Indemnification Agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation.

60.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Engagement Indemnification Agreement does not contain an exemption addressing violation of the *per se* prohibited transaction rules under ERISA § 406. The Engagement Indemnification Agreement does not require payment of interest or otherwise account for the time value of money should Argent ultimately be required to reimburse Morton.

61.     Pursuant to the Morton Buildings, Inc. Leveraged Employee Stock Ownership Trust, Morton, by Chief Executive Officer and President John Russell—who held those positions before, at the time of, and after the ESOP Transaction—agreed to indemnify Argent as Plan Trustee in a contract made and entered into on May 8, 2017 and effective as of January 1, 2017 ("Trust Engagement Agreement"). The Trust Engagement Agreement covers Argent's role as Plan Trustee in connection with the ESOP Transaction. The indemnification agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation.

62.     The Trust Engagement Agreement includes an exemption if a court of competent jurisdiction holds that a loss resulted from Argent's "gross negligence" or "willful misconduct," or "breach of any fiduciary duty imposed under ERISA." Those carve-outs do not apply to ERISA § 406 claims for "Prohibited Transactions," which are different than ERISA § 404 claims

concerning "Fiduciary Duties," and as establishing *per se* statutory violations do not require findings of gross negligence or willful misconduct.

63.     The Trust Engagement Agreement includes a provision that nullifies certain court holdings that indemnification is unavailable to Argent: "If a court of competent jurisdiction holds that any payment or award of indemnification pursuant to the terms of this Trust Agreement is unavailable to any one or more of the Indemnitees from the Company for any reason other than their gross negligence, willful misconduct or breach of fiduciary duty, the Company then shall nonetheless reimburse the affected Indemnitees, as required by Section 9.1, but taking into account the basis for the denial of full indemnification by the court."

64.     The Trust Engagement Agreement does not require payment of interest or otherwise account for the time value of money should Argent ultimately be required to reimburse Morton.

65.     The indemnification agreements are invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because Argent violated its ERISA duties to the Plan, and its legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

66.     Payment by Morton of millions of dollars of attorneys' fees, costs, litigation expenses, and liabilities to Argent necessarily would adversely impact Morton's equity value and therefore the value of Plan assets. Direct payment or reimbursement of Argent's attorneys' fees, costs, litigation expenses, and liabilities by Morton, or the Plan that owns it, would adversely affect the Plan and Plaintiff's and other participants' financial interests.

## CLAIMS FOR RELIEF

### COUNT I

**Causing and Engaging in Prohibited Transactions Forbidden by
ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against Argent**

67.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

68.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here Argent, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here Morton stock, with a party in interest, here the Selling Shareholders, as took place in the ESOP Transaction.

69.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits Argent from causing the Plan to borrow money from a party in interest, here Morton and the Former Shareholder, as took place in the ESOP Transaction.

70.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits Argent from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here the Selling Shareholders, of any assets of the Plan, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for Morton stock and in continuing payments on the loan.

71.     The stock and loan transactions between the Plan and the parties in interest were authorized by Argent in its capacity as Trustee for the Plan.

72.     Argent caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

73.     ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any

consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

74.     Argent caused the Plan to acquire Morton stock from the Selling Shareholders above fair market value and with the proceeds of three loans that were used to pay the Selling Shareholders. This primarily benefited the Selling Shareholders to the substantial detriment of the Plan and its participants and beneficiaries, even though Argent was required to act solely in the interests of the Plan's participants and beneficiaries in connection with any such transaction.

75.     Argent received consideration for its own personal account from Morton—fees and an indemnification agreement—as Trustee for the Plan in the ESOP Transaction, in violation of ERISA § 406(b)(3).

76.     Argent caused and engaged in prohibited transactions in violation of ERISA § 406(b) in the ESOP Transaction.

77.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

78.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

79.     Argent has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

**Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against Argent**

80.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

81.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

82.    The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

83.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

84.    ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

85.     Argent was required to undertake an appropriate and independent investigation of the fair market value of Morton stock in or about May 2017 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the Morton stock purchased by the Plan.

86.     Argent breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

87.     Argent has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

## COUNT III

### Violation of ERISA §§ 410 and 404(a)(1)(A), (B),
### 29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against Argent

88.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

89.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve Argent, a Plan fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable to the Count I claim here.

90.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

91.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

92.     The indemnification agreement purports to provide payment or reimbursement for the benefit of Argent for its expenses, losses, damages, and liabilities, including but not limited to attorneys' fees.

93.     To the extent that the indemnification agreement attempts to relieve Argent of its responsibility or liability to discharge its duties under ERISA, or attempts to have Morton (a Plan-owned company) and thereby the Plan be responsible for Argent's liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

94.     To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

95.     As a result of the foregoing, should it be held liable under the preceding Count I, Argent should be ordered to disgorge any indemnification payments made by Morton and/or the Plan, plus interest.

## COUNT IV

**Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3), Against Jan Rouse and Edward C. Miller**

96.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

97.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

98.    The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

99.    As a result of the prohibited transactions described above, selling shareholders Jan Rouse and Edward C. Miller, the Defendant Shareholders, received Plan assets in payments above fair market value for their Morton stock.

100.    The Defendant Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

101.    The Defendant Shareholders knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their Morton stock in the ESOP Transaction, (3) that Argent was a fiduciary to the Plan, (4) that the ESOP Transaction was for above fair market value, (5) that Argent caused the Plan to engage in transactions prohibited under ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b), (6) that Argent breached its fiduciary duties under ERISA, and (7) that the true purpose of the ESOP Transaction was to benefit the Selling Shareholders.

102.     As directors of Morton and as Selling Shareholders, Defendants Jan Rouse and Edward C. Miller were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction with parties in interest. As parties in interest, the Defendant Shareholders are liable for violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

103.     The Defendant Shareholders have profited from the prohibited transactions in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets that belong to the Plan.

104.     The Defendant Shareholders are subject to appropriate equitable relief including disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## **CLASS ACTION ALLEGATIONS**

105.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the Morton Buildings, Inc. Leveraged Employee Stock Ownership Plan (the "Plan") and the beneficiaries of such participants as of the date of the May 8, 2017 ESOP Transaction or anytime thereafter. Excluded from the Class are the shareholders who sold the stock of Morton Buildings, Inc. ("Morton") to the Plan on May 8, 2017, and their immediate families; the directors and officers of Morton and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

106.     The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's

most recent Form 5500 filing reports that as of December 31, 2018, there were 1,802 participants and beneficiaries of deceased participants receiving or entitled to receive benefits in the Plan.

107.   Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

    i.   Whether Argent served as Trustee in the Plan's acquisition of Morton stock;

    ii.   Whether Argent was an ERISA fiduciary of the Plan;

    iii.   Whether Argent caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase Morton stock and take loans from parties in interest;

    iv.   Whether Argent engaged in a good faith valuation of the Morton stock in connection with the ESOP Transaction;

    v.   Whether Argent caused the Plan to pay more than fair market value for Morton stock;

    vi.   Whether Argent engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

    vii.   Whether Argent engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

    viii.   Whether Argent breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of Morton stock in or about May 2017;

    ix.   Whether Morton was a party in interest;

    x.   Whether the Selling Shareholders were parties in interest;

      xi.   Whether Jan Rouse and Edward C. Miller, as parties in interest, participated in the prohibited transactions;

      xii.   Whether the Former Shareholder with whom the Plan entered a term loan agreement was a party in interest;

      xiii.   The amount of losses suffered by the Plan and its participants as a result of Argent's ERISA violations; and

      xiv.   The appropriate relief for Argent's violations of ERISA.

108.     Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of her Plan account because the Plan paid above fair market value and took on excessive loans for Morton stock, resulting in her being allocated fewer shares of stock, and she continues to suffer such losses in the present because Argent failed to correct the overpayment by the Plan.

109.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

110.     Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Argent, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

111.     The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A.      Declare that Defendant Argent caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B.      Declare that Defendants Jan Rouse and Edward C. Miller engaged in a prohibited transaction with the Plan in violation of ERISA;

C.      Declare that Defendant Argent breached its fiduciary duties under ERISA to the Plan and the class members;

D.      Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan and/or to any successor trust(s) the losses resulting from the breaches of ERISA and restore any profits it, he, or she has made through use of assets of the Plan;

E.      Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

F.      Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

G.      Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendants' breaches of ERISA;

H.      Declare that the indemnification agreement between Defendant Argent and Morton violates ERISA § 410, 29 U.S.C. § 1110;

I.      Order Defendant Argent to reimburse Morton for any money paid by Morton under any indemnification agreement between Argent and Morton, plus interest;

J.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

K.      Order Defendant Argent to disgorge any fees it received in conjunction with its services as Trustee for the Plan in the ESOP Transaction as well as any earnings and profits thereon;

L.      Order Defendants to pay prejudgment and post-judgment interest;

M.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and her counsel as class counsel; and

N.      Award such other and further relief as the Court deems equitable and just.

Dated:     April 30, 2020

Respectfully submitted,

**BAILEY & GLASSER LLP**

*/s/ Patrick O. Muench*
Patrick O. Muench
333 S. Wabash Ave.
Suite 2736
Chicago, IL 60604
Telephone: (312) 995-7143
Facsimile: (304) 342-1110
pmuench@baileyglasser.com

Gregory Y. Porter (admission motion to be filed)
Ryan T. Jenny (admission motion to be filed)
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

*Attorneys for Plaintiff*